## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF

# NORTH DAKOTA

---

**THE CITY OF CASSELTON, a Municipal Corporation, Appellant, v. ELMER LEE, Respondent.**

(208 N. W. 400.)

**Licenses — person employed by resident of city for general work not within ordinance of city requiring drayman's license.**

Where one W., resident of Casselton, had employed L., at $2.50 per day for general work and labor prior to L.'s arrest, and W., wishing to move some brick owned by him from one part of the city to another, hired a team and wagon from one S., and directed L. to use the outfit in moving the bricks, it is held that L. is not running a "hack, omnibus, dray or any other vehicle of any description for the purpose of carrying or transporting passengers . . . or any . . . commodity . . . for pay or compensation," within the provisions of a city ordinance requiring persons of the classes enumerated to obtain a license from the municipality.

Opinion filed March 30, 1926.

Licenses, 37 C. J. § 82 p. 230 n. 25, 28; § 83 p. 231 n. 42.

Appeal from the District Court of Cass County, *Cole, J.*
Affirmed.

---

Note.—Power to levy and collect license tax on drays and other similar vehicles, see annotation in 45 L.R.A.(N.S.) 1152; 17 R. C. L. 504.

*J. F. Callahan,* City Attorney, for appellant.

The right and authority of a city in North Dakota to provide by ordinances for an occupation tax cannot be questioned. Re Lipschitz, 14 N. D. 622, 95 N. W. 157; Re Watson (S. D.) 129 Am. St. Rep. 283, 97 N. W. 463; Oil City v. Oil City Trust Co. 31 Am. St. Rep. 770 and note; 17 R. C. L. 479, 480; 19 R. C. L. 952, 953, 974.

*Fowler, Green & Wattam,* for respondent.

Where authority is given to a municipal corporation to pass ordinances, the violating of which is punishable with fines, or fines and imprisonment, the proceedings thereunder are necessarily criminal proceedings when the state has delegated thereto a municipal corporation to enact ordinances for the punishment of offenses as crimes, the proceedings are criminal and an acquittal upon appeal to the district court is an end of the defendant's liability. State v. Bail, 10 N. W. 297.

The state, herself, in her own direct prosecutions, is prohibited from harassing the citizen after an acquittal upon the merits, and it cannot be said that the state can delegate a greater power than itself possesses. Village v. Westfall (Mich.) 42 N. W. 1068; President v. McKernan, 11 N. W. 798.

The right to have proceedings for the alleged violation of a municipal ordinance by appeal exists only when authorized by law. Town v. Miles (Ala.) 45 So. 160.

A license is authorized on the occupation or use to which the vehicle is put as drays, etc., carrying goods, merchandise, etc., as a business. 3 McQuillin, Mun. Corp. § 1012; White Co. v. City (Va.) 64 S. E. 944; Cary v. Mayor (N. J.) 9 Atl. 42; State v. Robinson (Minn.) 6 L.R.A. 339.

Ordinances must be reasonable, and they must not cause such oppressive or gratuitious interference with the rights of the citizens as can find no justification in the minds of reasonable men. 19 R. C. L. §§ 112, 113.

JOHNSON, J. The defendant was arrested in August, 1924, by the chief of police of plaintiff city, charged with violating chapter 13 of the city ordinances; a warrant was issued and defendant was brought before the police magistrate where he pleaded not guilty; after trial

he was found guilty and fined $5. Defendant, in due course, appealed to the district court, where the facts were stipulated, a jury waived and the case submitted to the court without a jury for determination on both law and fact.

The facts are substantially as follows: One West, a resident of Casselton, had employed the defendant for general work and labor. Sometime prior to Lee's arrest, West wished to move a quantity of brick owned by him from one part of the city to another. West hired a team and wagon from one Schwenke, and directed the defendant to use the outfit in moving the bricks. Defendant received as wages $2.50 per day and apparently was not hired for the specific purpose of transporting the bricks. His employment appears to have been general and the moving of the bricks was one of its incidents. None of the parties mentioned had a drayman's license from the city.

The material portions of chapter 13 of the ordinances of the city of Casselton under which the defendant was arrested and fined, are as follows: "Section 115. It shall be unlawful for any person, by agent or otherwise, to have, keep, establish or run any hack, omnibus, dray or any other vehicle of any description for the purpose of carrying or transporting passengers, goods, wares or merchandise, or any other material or commodity, from place to place within the limits of Casselton, for pay or compensation, without first obtaining license therefor." Section 116, prescribes the period to be covered by the license, the amount of graduated fees, and from whom the license may be procured. Section 118, provides that each licensee shall procure from the city auditor a number corresponding with his license and such number shall be "fastened to the *bus* or *dray* operated under said license, so that it may be easily seen." (Emphasis is ours.) It provides also that any person violating any provisions of this chapter shall be fined not less than $1 and not more than $5 for each offense.

The trial court held against the plaintiff and dismissed the proceeding and discharged the defendant, finding that the facts stipulated do not constitute an offense under the ordinance.

The plaintiff contends that the proceeding is a civil action and is governed by statutes pertaining to appeals in civil cases; that the ordinance of the city of Casselton is an occupation tax, sanctioned and permitted by § 3599, subdivision 31, Comp. Laws 1913. Subdivision

31, supra, reads as follows: "The city council shall have power to license, tax and regulate hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen, watermen, and all others pursuing like *occupations,* and to prescribe their *compensation."* (The emphasis is ours.)

It is the contention of the defendant, on the other hand: (a) That the proceedings before the magistrate and in the district court are criminal in nature and in fact and that the defendant, having been once acquitted in the district court and discharged from custody, has been put in jeopardy and that, therefore, the question is wholly moot, within the decision of this court in State v. Kelsey, 49 N. D. 148, 190 N. W. 817. (b) That there is no provision for an appeal by the city from a final decision of the district court in prosecutions for violations of city ordinances; (c) That the licensing ordinance under which the defendant was prosecuted purports and was intended only to deal with persons who pursue the business of hackmen, draymen, etc., as an *occupation* for *compensation;* and (d) that to hold the ordinances applicable to individual or private acts of citizens when not engaged in draying as a business or an occupation, would be to render the ordinance unreasonable and beyond the charter powers of the city. See § 3599, Comp. Laws 1913, supra.

We find it unnecessary to consider more than one of the interesting questions raised by the counsel for the defendant. Assuming that the ordinance is intended to tax the occupation of a drayman, hackman, carter, driver, porter, etc., we think the evidence wholly fails to bring the defendant within the terms of the ordinance. Before an occupation tax can be levied, there must be an occupation on which it can be laid. The stipulated facts clearly disclose that the defendant was in the general employ of West who, in the course of such employment, turned over to him a team and a wagon with instructions to use the outfit in transporting some personal property owned by the employer from one place in the city to another. The team and wagon, it is true, were obtained from another resident of Casselton and compensation made for their use. All the stipulated facts negative the contention of the plaintiff that the defendant was engaged in the occupation of a drayman within the statute authorizing the city to tax or license such an occupation. We think it is clearly the intent of subdivision 31 that

the occupations therein enumerated are occupations pursued for hire or compensation. Ordinarily that subdivision would not be construed as giving authority to the city to impose a vehicle tax in any proper sense, or to declare the ordinary use, by the general public, of the streets a privilege or occupation subject to tax. Cooley, Tax. 4th ed. § 1680. The statute assumes hire or compensation; and the ordinance itself, especially §§ 115 and 116, supra, clearly contemplates that the work of draying, etc., shall be for hire. Lee was hauling brick as a general employee of West, the latter having furnished him a team and wagon with which to do the hauling. Lee was not engaged in the occupation of a drayman within the purpose or purview of the ordinance.

If the ordinance be not viewed as an occupation tax, but merely as a license regulation of draymen, cabmen, etc., the same result follows: The statute—§ 3599, subsection 31—does not give the city the power to exact a license for the general use of streets and highways from individuals who may drive a wagon thereon, either hauling their own property, or, as servants, hauling their master's property with outfits furnished by the employer. Nor is such the purpose of the ordinance. Whether the charge imposed is collected in the exercise of the police power, or is an exaction made pursuant to the power to levy a tax, is of no importance in this case. In either event the result is the same.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and BIRDZELL, JJ., concur.